United States District Court Southern District of New York

| | |
|---|---|
| Rhawn Joseph, Ph.D. pro se | Case Number: 20 CV 4672 |
| 408-286-9833 | Filed On: 6/17/2020 |
| 677 Elm St. San Jose, CA  95126 | Judge: |
| RhawnJoseph@gmail.com | |
| ---------------------------------------------} | |
| Rhawn Joseph, Ph.D.                          } | PLAINTIFF'S FIRST AMENDED COMPLAINT: |
| Plaintiff                                    } | COPYRIGHT INFRINGEMENT |
| v                                            } | BREACH OF CONTRACT, LIBEL, DEFAMATION, |
| Springer Nature,  Springer a                 } | FALSE ADVERTISING, MALICE, FRAUD, |
| Subsidiary of Springer Nature,               } | PERSONAL INJURY, NEGLIGENCE, |
| Elias Brinks,  Jeremy Mould,                 } | DEMAND FOR PERMANENT INJUNCTIVE RELIEF |
| Does 1-10                                    } | -Plaintiff's Declaration |
| sued in their individual capacities          } | -Demand for Jury Trial |
| and as co-conspirators                       } | |
| Defendants                                   } | |
| _____} | |

-Federal Subject Matter Jurisdiction 28 U.S.C. § 1338(a)

 Copyright Act of 1976, 17 U.S.C. § 101, et. seq.  28 U.S.C. § 1331.

## INTRODUCTION

1.      Plaintiff brings this action and first amended complaint against Defendants Springer Nature, Springer, Elias Brinks and Jeremy Mould ("Defendants"). Brinks and Mould are the Editors-in-Chief of Astrophysics and Space Science (ASS) which is published by Springer and Springer Nature.

2.      This lawsuit includes seven causes of action which can be summarized as follows: (1) Infringement of Copyright, (2) Breach of Contracts and Tortious Interference with Contracts, (3) Libel, Defamation, Slander, Malice, (4) Personal Injury and Intentional and Negligent Infliction of Emotional Distress,  (5) Negligence, (6)  Fraud and False Advertising, (7) demand for Injunctive Relief

## FACTS AND HISTORY

3.      Plaintiff entered into a contractual relationship with publishing companies, Springer and Springer Nature, on or about October 22, 2019, which entailed the subsequent publication of Plaintiff's review article "Life on Venus" (Work 1) and to which he owns the copyright. ASS is published by Springer / Springer Nature. "Life on Venus" is a major contribution to the scientific literature and immediately became ASS's most popular article with 5000 reads (to date) compared with an average of 10 reads for all other articles published by ASS.

4.      Plaintiff subsequently submitted a second article for peer review and publication by ASS, titled "Life on Mars" (Work 2). The article underwent extensive peer review by seven referees of Springer / Springer Nature's choosing. Following recommendations by the Referees to publish the article, ASS's editor-in-Chief Mould and Springer / Springer Nature accepted the article for publication and Plaintiff entered into a second contractual agreement with Defendants Springer / Springer Nature on or about April 12, 2020,  and "Life on Mars" (Work 2) was put into production.  This article featured photos-- photographed by NASA's robotic rovers-- of thousands of mushroom-lichen-like specimens, attached by thin stems to rocks on the surface of Mars, forming vast colonies and oriented upward as is typical of photosynthesizing lichens. This article, which was "in press" (but not yet published) drew the attention of hundreds of reporters from around the world, including in New York, and who began making inquires.

5.       One of the two editors at ASS, Defendant Brinks, learning of the interest of reporters, and acting out of jealousy and spite, tortiously interfered with this contract, and halted production, withdrew the article (Work 2) from publication, and claimed that the Defendants Springer / Springer Nature and Mould were negligent and had not properly reviewed Plaintiff's article--despite the seven independent reviews Defendants had arranged. Brinks, who has no expertise in the subject matter, then conjured forth a

number of lies and libeled and defamed the Plaintiff by challenging his integrity and claiming his article (Work 2) was not worthy of being published without additional review by reviewers of Brink's choosing: "We became aware of concerns expressed over the manuscript and extensive changes to it at the proofing stage and, as a result, we assessed the manuscript and the peer review process. These investigations revealed concerns over the robustness of the process. As such, acceptance for publication can only be considered following further independent peer review. We hope that you can appreciate that the integrity of the scientific literature and the independence of the peer review process have to be our utmost priority." Although Brinks blamed the other Defendants, he then stated that because of their negligence Plaintiff's article (Work 2) should not be published, the publishing contract was null and void, and thus Brinks interfered with and in conjunction with the other Defendants, breached the publishing contract; and, in concert with the other Defendants, humiliated and defamed this Plaintiff in the eyes of the world press. Fact is, most articles are reviewed by only one or two referees, whereas "Life on Mars" (Work 2) was reviewed by seven referees of the Defendants' choosing, and accepted for publication.

6.      Beginning or about April 12, 2020, Plaintiff received several emails from "Jo Cox" at Springer Nature, who claimed to represent Brinks, Mould, ASS, and the publisher Springer and Springer Nature. Cox repeatedly affirmed the decision to cancel the contract of "Life on Mars" (Work 2), and bragged that Plaintiff was helpless and could not file suit because Springer Nature was not an American Company.

7.      Because Plaintiff had been harmed and did not trust the Defendants, he withdrew the "Life on Mars" (Work 2) article from further consideration by ASS. "Life on Mars" was subsequently published in April of 2020 by another journal, and in less than two months received over 5,200 reads by the scientific community compared to the less than 10 reads on average for articles published by Mould and Brinks in ASS. Clearly, "Life on Mars" is considered a major achievement and of major interest by the scientific community despite Defendants efforts to discredit the article before it was published.

8.      On or about April 12, 2020, because Defendants were behaving maliciously and had damaged Plaintiff's reputation, and fear that Brinks and the other Defendants intended to cause Plaintiff additional injury, Plaintiff emailed a take down notice and demanded that the Defendants issue a refund and remove "Life on Venus" (Work 1) from their Springer Nature ASS website. Plaintiff owns the copyright to "Life on Venus" which they had published in October of 2019. Life on Venus also became a major success with over 4,400 readers (to date) compared with the less than 30 which is typical for ASS publications.

9.      On or about June 11, 2020, two months after receiving the first take down notice, Brinks, Mould,

Cox and other corporate officers at Springer and Springer Nature conspired to retaliate, libel and destroy Plaintiff's reputation, and to pretend that it was their decision to remove "Life on Venus" (Work 1). They informed Plaintiff they would print on the first page of the article, that they had judged this article to be unfit for publication, despite all evidence it is a major contribution to the scientific literature.

10. Defendants, in an email signed by the "publisher" (Springer / Springer Nature) stated they would watermark his "Life on Venus" article; claiming Plaintiff is incompetent and had engaged in misconduct and fraud and that his scientific abilities "are superficial and flawed" and that Plaintiff has "little factual" knowledge of "science." They further informed Plaintiff they would falsely and libelous state, on the front page of the "Life on Venus" article (Work 1) that "The manuscript is based largely on morphological comparisons which are superficial and flawed. The manuscript incorrectly states the temperature range that life on Earth can exist and never fully addresses both the temperature of the surface of Venus nor the effect of the caustic environment (see extensive work by Rothschild, L. J., and R. L. Mancinelli (2001), Life in extreme environments, Nature, 409(6823), 1092-1101). Further, they regard the manuscript as speculative with little factual science as to how to detect life on other planets. Geomorphologic comparisons for life detection are not robust and we must follow qualitative measures such as the ladder of life detection (Neveu, M., L. Hays, M. Voytek, M. New, and M. D. Schulte (2018), The Ladder of Life Detection, Astrobiology, 18(11), 1375-1402.) Further, there is now more robust ongoing work discussing Venus as a habitable environment (see LPSC 2020 abstract by Noam Izenberg for example https://www.essoar.org/doi/abs/10.1002/essoar.10502588.1). Based on the above advice the findings in the 'Life on Venus' paper are unreliable and we will now retract this article. In line with the journal and publisher policy we will proceed to publish a retraction notice to inform our readers that the article has been retracted. The original article will remain on our website, but it will be linked to the retraction notice, the title will be modified to state Retracted Article, and the article pdf will be watermarked to indicate that it has been retracted. The retraction notice will outline the reason for retraction and also include a statement from you indicating whether you agree to this retraction or otherwise...Yours sincerely, The Editors-in-Chief and Publisher."

11. The Defendants are lying, confabulating, engaging in fraud and falsifying their references: The "Rothschild, L. J., and R. L. Mancinelli" article and the "The Ladder of Life Detection" article that Defendants describe as authorities on Venus make absolutely no mention of Venus and have nothing to do with Venus and consist of opinions. The "abstract by Noam Izenberg" that Defendants identify as authoritative is actually a three page comic-book with cartoons posted on a website,

12.     Contrary to the libelous and false claims of the Defendants "Life on Venus" (Work 1) is not about how to detect life on other planets. There is no "methodology" as "Life on Venus" is a review of the literature. Speculation is identified as speculation.  Nor is Life on Venus "based largely on morphological comparisons" as the article is 18 pages in length, and the section on "morphology" is only one page in length and there are no morphological comparisons.  The temperature of Venus and its caustic environment are also detailed. Statements as to the "temperature range that life on Earth can exist" is not based on Plaintiff's research but on the published research of other scientists and whose work is quoted.

13.     Defendants are implying and falsely claiming that Plaintiff has fabricated data, committed major errors in experimental design and the statistical analysis of data, when "Life on Venus" is not a research article reporting experimental results, but a synthesis and review of what other scientists have reported and previously published; and Plaintiff's "Life on Venus" had been reviewed and accepted for publication by reviewers chosen by the Defendants and approved for publication by the Defendants.

14.     The authoritative and importance of Plaintiff's "Life on Venus" (Work 1) article is verified by the fact that over 3,500 scientists have read the work at the ASS website and additional 1,100 at Researchgate (to date), and the article has already been cited by other scientists--it's popularity and importance spread by word of mouth.  By contrast, the average article at ASS is read by 10 people. Clearly, "Life on Venus" is a major achievement which makes a major contribution to the scientific literature.

15.     The fact is: Defendants faked what they claimed were additional reviews, falsified their references, and lied about the content and major significance of the "Life on Venus" article. Defendants also breached their own contractual and advertised guarantees for the retraction or any expression of concern regarding an article. As explicitly stated on the Springer / Springer Nature website, they take action only after due diligence, investigation and discussions with the author, and if there is evidence of fraud and malfeasance as defined by and in accordance with the COPE Guidelines" which are as follows: "if: • they have clear evidence that the findings are unreliable, either as a result of misconduct (e.g. data fabrication) or honest error (e.g. miscalculation or experimental error) • the findings have previously been published elsewhere without proper cross referencing, permission or justification (i.e. cases of redundant publication) • it constitutes plagiarism • it reports unethical research."

16.     Defendants were provided a detailed rebuttal of their libelous claims, which they chose to ignore, and on 6/17/2020, this lawsuit was filed with the Federal Court in New York. On or about 6/23/2020 the Defendants retracted the above libels and instead they altered and republished the article with a warning to readers and accusing and stating they were investigating this Plaintiff for fraud and incompetence:

"Readers are alerted that the conclusions of this article are subject to criticisms that are being considered by the editors. Editorial action will be taken as appropriate once the investigation of the concerns is complete and all parties have been given an opportunity to respond in full." The fact is, these fake criticisms about the conclusions were "manufactured" by the Defendants. There is no investigation.

17.     Plaintiff's conclusions, which consist of only three sentences, are based entirely on and consist of a paraphrased summary of what other scientists have already concluded and whose work is extensively discussed and cited in Plaintiff's article; e.g. Nobel Laureate Svante Arrhenius has twice published major works in which he states that Venus was contaminated with Earthly life beginning early in its history and continuing into the present via microbial-laden dust and debris from Earth's atmosphere. Plaintiff in the conclusion of his review article states: "Venus may have been contaminated with Earthly life early in its history, and that seeding with life may have continued into the present via microbial-laden debris, dust, and spacecraft." The work of M.J Way of NASA and former NASA scientist David Greenspoon is also cited and discussed and they conclude that until around 750 mya Venus "may have had enough condensable water on its surface for a shallow ocean... Venus's climate could have remained habitable until at least 0.715 Gya" Plaintiff is his conclusions states: "Venus may have had oceans and rivers until as recently as 750 mya."  In two additional articles cited by Plaintiff, Greenspoon and Dirk Schulze-Makuch (University of Washington) and C. S. Cockell formerly of NASA, states that after temperatures rose and Venus lost its ocean, surviving organisms may have adapted and evolved. Plaintiff states in his conclusions: "hypothetically, species which colonized the planet may have adapted and evolved when those oceans evaporated and temperatures rose." Greenspoon, Schulze-Makuch and Cockell also claim that microbes currently dwell in the clouds of Venuss, Greenspoon in yet another cited article claims there is life on the surface of Venus, whereas Schulze-Makuch argues that life may be arriving from Earth. Plaintiff in his conclusions states: "However, Venus may still provide a habitable environment for a variety of hyperextremophiles including fungi which might be continually arriving from Earth."

18.     Plaintiff's work is a review article and his conclusions are a review of and a restatement of the work of other scientists; thus proving that the Defendants have negligently and maliciously libeled and defamed this Plaintiff. Defendants are maliciously incompetent, negligent and their purpose is to humiliate, impugn and destroy Plaintiff's reputation and discredit his lifetime of major scientific achievement, because, in April of 2020 Plaintiff repudiated their fake ASS journal by sending the Defendants a "take down notice" and demanding they remove "Life on Venus" from their ASS website.

## DAMAGE AND THREATENED DAMAGE TO PLAINTIFF'S REPUTATION AND SCIENTIFIC ACHIEVEMENTS

19.     Plaintiff is one of the leading figures in the search for extraterrestrial life. In addition to the Plaintiff, less than two dozen other scientists have found evidence (but as yet no conclusive proof) of life on Mars and only two have found evidence of life on Venus, and Plaintiff is one of those two. In fact, Plaintiff is the pioneer who is the first to provide direct physical, visual evidence of what appears to be life, i.e. fungi, algae, lichens on the surface of Mars; and two of his major publications (RE: Life on Mars) are being reprinted by the major science publisher, Wiley. Naturally, those who make major discoveries are subject to the jealousies of their peers and assorted mediocrities and those who represent the status quo; all of whom may do almost anything to discredit these discoveries--it's the history of science.  Hence, it's been said that major scientific discoveries must pass through three stages: 1) Ridicule, 2) Violent opposition, 3) Acceptance as obvious and self-evident. Plaintiff' work as related to the possibility of life on Venus and Mars, is now at stage 2 (violent opposition).   By contrast Plaintiff's previous discoveries, considered controversial and major at that time (the 1970s), are now considered obvious and self-evident.

20.     Plaintiff began his professional scientific career in the 1970s when he proved and published what were then, major controversial discoveries: 1) neuroplasticity and recovery of function in the primate brain, 2) the hormonal basis of sex differences, 3) early environmental influences on primate brain neuronal-synaptic connections, competition between neurons, and neural-perceptual development in primates, 4) the effects of enriched vs deprived early environmental influences on intelligence, memory, learning, curiosity and visual functioning, 5) Split-Brain - Dual Mental Functioning in Adults and Children following split brain surgery (see Joseph 1978, 1980, Joseph et al. 1978, 1979; Joseph & Gallagher, 1980; Joseph & Casagrande 1978, 1980; Casagrande & Joseph 1978, 1980). These major discoveries--many of which were thought to be impossible at the time-- have been repeatedly replicated and are now considered "common sense." Over the following decades Plaintiff published major scientific studies in the fields of neuroscience, brain and child development, evolution, quantum physics, consciousness, genetics, and astrobiology. He has been invited to speak at major universities including the University of California at Berkeley, his works have been reprinted by prestigious medical schools and universities including Harvard, and his works have received the highest praise by numerous scientific journals and the American Library Association.

21.     Between 2014 and 2020, Plaintiff has published evidence of what appears to be fungi, algae, and lichens on the surface of Mars. In 2019 and 2020 Plaintiff led a team of 17 of the worlds experts, including scientists with the Harvard-Smithsonian Dept. of Astrophysics, and the University of California, and prestigious universities in Italy, England, Germany, and the National Research Council in Italy and National Academy of Sciences in France and Poland, and has published additional evidence of fungi, algae, lichens, stromatolites, and microfossils on the surface of Mars; and, in 2019, evidence of what may be fungi on the surface of Venus. Plaintiff's research on the possibility of life on Venus and Mars has been widely read within the scientific community and has drawn the attention of members of Nobel Prize committee and the Royal Swedish Academy of Sciences. Naturally, Plaintiff is viewed with jealousy, envy, and hatred by mediocrities; because, its human nature.

22.     Brinks and Mould are mediocrities. Springer Nature is a major publisher which acts as a "gate keeper" on behalf of the status quo, and which predominantly publishes minutia which is repackaged and sold to libraries including those in New York. These Defendants have maliciously conspired to destroy this Plaintiff's reputation and discredit his lifetime of scientific achievements and have caused Plaintiff profound injury and damages because he sent a "take down" notice to their fake ASS journal.

**ARGUMENT**

**Breach of Contract**

23.     Defendants twice entered into a contract with Plaintiff to publish his works, "Life on Venus" (Work 1) and "Life on Mars" (Work 2) and then breached those contracts, as defined by UCC § 2-207(1)(2) and New York Consolidated Laws, Uniform Commercial Code - UCC § 2-607, § 2-610, § 2-510, and General Business Law, GBS § 458-I, § 899-H.

24.     In October of 2019, Defendants published "Life on Venus" (Work 1) and accepted payment and agreed to contractual terms with Plaintiff.

25.     In April of 2020 Defendants placed Plaintiff's article, "Life on Mars" (Work 2) into production, and Plaintiff and Defendants agreed to payment and contractual terms in which Defendants would make the published work available to the public. When reporters expressed interest, Defendants then repudiated that contract and claimed they had made an error in agreeing to publish "life on Mars."

26.     As determined in ProCD, Inc. v. Zeidenberg, 86 F.3d 1447 (7th Cir. 1996) the click of a button accepting a license's terms  serves as proof of a contractual agreement. A contract is also binding and remains valid despite any claims of making a mistake or errors (Seixas v. Woods 2 Cai. R. 48 (N.Y. Sup.

Ct. 1804). In Jacob & Youngs, Inc. v. Kent, 230 N.Y. 239 (1921). Defendants are claiming they made errors and that their errors and their negligence are grounds for violating their contracts with this Plaintiff.

27.     Plaintiff is the registered copyright owner of "Life on Venus" (Work 1) as stated on the first page of the published article and as defined by U.S. copyright law, Title 17. In April of 2020, because Plaintiff feared the Defendants, Plaintiff sent Defendants a take down notice, demanding they remove the "Life on Venus" article from their ASS website.  Defendants refused, stated they are going to add unauthorized content to the first page discrediting this Plaintiff, and are thus infringing on Plaintiff's copyright and violating the Federal Copyright Act.

**Personal Injury**

28.     Defendants, acting out of jealousy, envy, spite, hatred, and a desire for revenge, conspired together to destroy Plaintiff's reputation and have caused and threaten to cause Plaintiff profound professional and personal injury and emotional distress. 18 U.S. Code § 2255. details the civil penalties for personal injuries.  As defined by New York Consolidated Laws, GCN § 37-a. "Personal injury" includes libel, slander and malicious... or other actionable injury to the person either of the plaintiff, or of another." The conduct of the Defendants was malicious, negligent and intentional as defined by CVP Rule 3016.

**Libel, Slander, Malice**

29.     Defendants libeled and slandered Plaintiff in April of 2020, and  stated that because of their negligence and failure to properly review Plaintiff's work, they had erroneously agreed to publish "Life on Mars" (Work 2). Defendants breached their contract and cancelled publication and publicly disavowed and discredited Plaintiff's article which they stated was unfit to be published without additional review. Defendants informed reporters of their decision thus publicly humiliating and defaming the Plaintiff.

30.     On or about June 12, 2020, Defendants stated their intention to publicly libel and defame the Plaintiff, by claiming his work "Life on Venus" (Work 1) should never have been published. They stated their intention to alter "Life on Venus" by printing libelous and slanderous falsehoods confabulated by the Defendants on the front page of the article.

31.     Plaintiff has therefore documented the "particularity in specific actions" as defined by CVP Rule 3016 (a) and that the Defendants and their directors and officers behaved negligently, and intentionally sought to and have harmed this Plaintiff by slandering, libeling and defaming the Plaintiff, and intentionally inflicting harm as defined by CVP Rule 3016 (h).

32.     Plaintiff has also shown that the Defendants have repeatedly engaged in actions that caused

special harm or 'defamation per se' (Dillon v City of New York, 261 AD2d 34, 38, 704 NYS2d 1 (1999) and "which tends to expose a person to hatred, contempt, or aversion or to induce an evil or unsavory opinion in the minds of a substantial number of people in the community (Mencher v. Chesley, 297 N.Y. 94, 75 N.E.2d 257 (1947); in this case, science reporters, the scientific community and the general public interested in the subject of astrobiology and astronomy.

33. Plaintiff has "set forth the particular words" constituting defamation and when and the manner in which the false statement was made, and specific to whom it was made" (Epifani v. Johnson, 65 A.D.3d 224, 233, 882 N.Y.S.2d 234 (2d Dept.2009) and to whom these statements are directed, i.e. scientists, science news reporters and the general public interested in science.

34. Defendants have maliciously and falsely charged Plaintiff with fraud, dishonesty, and serious crimes and their false accusations have injured this Plaintiff personally and professionally, and his trade, business, and profession (Liberman v Gelstein, 80 NY2d 429, 435, 605 NE2d 344, 590 NYS2d 857 (1992); Four Star Stage Lighting, Inc. v. Merrick, 56 A.D.2d 767, 392 N.Y.S.2d 297 (1st Dept. 1977).

35. The "Life on Venus" (Work 1) article was repeatedly peer reviewed by reviewers chosen by the Defendants, and revised accordingly, and then approved for publication and then published by the Defendants.  Likewise, the "Life on Mars" (Work 2) article was peer reviewed by seven referees of the Defendants' choosing and revised accordingly, and approved for publication. However, in both instances, despite careful review prior to acceptance and publication, the Defendants subsequently libeled and defamed the Plaintiff by claiming they had negligently failed to carefully review the work; and this makes them liable, as their negligence and their errors are not grounds for defaming this Plaintiff (see Weiner v. Doubleday & Co., 142 A.D.2d 100, 535 N.Y.S.2d 597 (1st Dep't 1988).

36. Defendants have maliciously created and continue to create a false and misleading impression regarding the Plaintiff's abilities as a scientist and the scientific value of his work, so as to destroy the Plaintiff's reputation and credibility as a scientist (see  Edward B. Beharry & Co., Ltd. V. Bedessee Imports  2010 WL 1223590, 95 U.S.P.Q.2d 1480 (E.D.N.Y. Mar. 23, 2010).

37. Plaintiff has shown that the Defendants have behaved in a grossly negligent and malicious manner, without due regard for the standards of information gathering and dissemination ordinarily followed by responsible parties involving similar matters and that they violated their own standards and procedures for repudiating a published work (Chapadeau v. Utica Observer-Dispatch, 38 N.Y.2d 196, 379 N.Y.S.2d 61, 341 N.E.2d 569 (1975).  In fact, their authoritative sources for making these libelous allegations

against Plaintiff's work, "Life on Venus" (Work 1) included a comic book that had not been peer reviewed or published but was merely posted on the internet in June of 2020. Likewise, the other articles they claim to be authoritative about Venus, make no mention of Venus.

**Malice and Negligence**

38.     Plaintiff is well known within the field of "astrobiology" and in the field of "neuroscience," but is generally unknown by the general public. Therefore, if the Plaintiff is a public vs private person or a limited-purpose public figure, is subject to the various interpretations based on case law (See James v. Gannett Co.,  40 N.Y.2d 415 (N.Y. 1976);  Wolston v. Reader's Digest Association, 443 U.S. 157, 168 (1979); Gertz v. Robert Welch,  418 U.S. 323, 352 (1974);  Curtis Pub. Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967).

39.     By contrast, there is general public interest in the question of life on other planets.  Life on Venus and Mars has been the focus of Plaintiff's research for many years and he has led a team of 17 distinguished scientists to search for evidence of life on Mars, and his works have been read by tens of thousands of scientists and nonscientists. Plaintiff's research and review articles, therefore address a question which is of general public interest, and Plaintiff's work has become a focus of interest within that aspect of the public arena where these questions are of importance. NASA has spent hundreds of billions of tax payer dollars to finance numerous missions to explore Mars (and to a lesser extent, Venus) and there is considerable media interest as to all aspects of Mars, particularly as related to life on the Red Planet. If there life on other planets is of major public and general interest and Plaintiff is one of the pioneers and leading authorities on this subject. Likewise, his works, Life on Venus and Life on Mars, are of major and general public interest.

40.     The United States Supreme Court ruled on private vs. public issues, that when "an event of public or general concern" is the focus, even private Plaintiffs have the right to file suit for libel and defamation (Rosenbloom v. Metromedia,  403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971).

41.     In addition the Defendants have been and are still attempting to prevent the public from gaining access to information that would be of legitimate interest, and to trick the public into believing that Plaintiff's work has been discredited and should not be believed (See Huggins v. Moore, 94 N.Y.2d 296, 302-03 (N.Y. 1999).  Defendants have acted with malice and "in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties" (Chapadeau v. Utica Observer-Dispatch, 38 N.Y.S.2d 196, 199 (N.Y. 1975).

42.     Plaintiff has therefore shown negligence and actual malice as well as common law malice; i.e. spite and ill-will (Gertz v. Robert Welch, 418 U.S. 323, 94 S. Ct. 2997 (1974) Stern v. Cosby, 645 F. Supp. 2d 258 (S.D.N.Y. 2009).

**Standing and Future Injuries**

43.     Plaintiff was defamed and slandered in April and again in June of 2020. The threats sent on or about June 11, 2020 to again libel this Plaintiff and to completely destroy Plaintiff"s reputation as a scientist are "certainly impending" and gives Plaintiff standing (Clapper v. Amnesty International USA, 133 S. Ct. 1138, 1143 (2013); MedImmune, Inc. v. Genentech, 549 US 118 - Supreme Court 2007; Kennedy v. City of Ridgefield, 439 F.3d 1055, 1065 (9th Cir. 2006).

44.     Plaintiff and Plaintiff's property have been damaged and are in "actual" "concrete" and imminent" danger of additional and future damages and is at "significant risk" for future harm and financial losses and this gives Plaintiff standing (Monsanto Company, 130 S. Ct. 2743, 2755). As determined by the Supreme Court the threat of future injury is actionable "...we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat" (MedImmune, Inc. v. Genentech, 549 US 118 - Supreme Court 2007).

45.     There is an obvious direct causal connection between the actions of the Defendants and the injuries and damages suffered, and future injuries Plaintiff may suffer (Massachusetts v. Environmental Protection Agency, 549 U.S. 497 (2007). Plaintiff has provided specific and general factual allegations of injuries suffered and threatened injuries which directly resulted from Defendants' conduct, and therefore has shown causation and has standing (Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

**Damages**

46.     Plaintiff demands damages of $100 million US, from each Defendant for each cause of action.

47.     Plaintiff has established defamation per se (Frank v. National Broadcasting Co., 199 A.D. 2d 252, 506 N.Y.S.2d 869 (2d Dep't 1986) and that his reputation has been damaged per se (see Hogan v. Herald Co., 84 A.D.2d 470, 446 N.Y.S.2d 836 (4th Dep't 1982) and will be damaged; and that he has suffered profound personal and professional injury, including emotional distress.

48.     Plaintiff pleads Special Damages (see November v. Time, 13 N.Y.2d 175, 244 N.Y.S.2d 309, 194 N.E.2d 126 (1963), Presumed damages, Actual damages, and Punitive damages (Salomone v. Macmillan Pub. Co., 77 A.D.2d 501, 429 N.Y.S.2d 441 (1st Dep't 1980) and asks for a permanent injunction to prevent Defendants from continuing to defame and libel Plaintiff. Thus, these claims and this injunction

will provide Plaintiff with relief.

**Plaintiff Has Shown Cause, Standing.**

49.     The Courts have ruled that at the pleading stage, general factual allegations of injury suffice as the Court must presume that Plaintiff's general and specific allegations embrace and are supported by specific facts which directly support the claim (Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

50.     Plaintiff has demonstrated standing for each claim and for each form of relief sought and thus has "standing" (DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 352 (2006); Duke Power Co. v. Carolina Environmental Study Group,  438 U.S. 59, 72 (1978).  Plaintiff has provided specific and general factual allegations of the numerous injuries suffered and which resulted from and which will result from the Defendants' conduct and thus has cause and standing (Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); Duke Power Co. v. Carolina Environmental Study Group,  438 U.S. 59, 72 (1978).

**Jurisdiction and Venue**

51.     This case details seven causes of action and seeks damages as well as  injunctive relief (Federal Rule of Civil Procedure 8(a)(2); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 ,570 (2007); Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

52.     The Federal Court has subject matter jurisdiction under 28 U.S.C. § 1338(a) because this action also arises under the Copyright Act of 1976, 17 U.S.C. § 101, et. seq. Federal Courts have exclusive jurisdiction over such claims pursuant to 28 U.S.C. § 1331; including over foreign nationals in cases of copyright infringement, even if their address is unknown and they cannot be served (Graduate Management Admission Council v. Raju, 241 F.Supp.2d 589 (E.D. Va., 2003).

53.     This action is also brought pursuant to the United States Constitution and the laws of New York as Springer and Springer Nature (AKA Springer Nature AG & Co. KGaA) maintain corporate offices in New  York and "is organized under the laws of the State of New York in the United States of America." For legal action,  Springer Nature specifies "jurisdiction of the courts located in the State of New York."

54.     The Court has "Personal Jurisdiction" over citizens of and corporations headquartered in other countries (and with or without offices in the United States), in that the Plaintiff is the victim and lives in and is a citizen of and was harmed in the U.S.A. (see United States v. Roberts, 1 F.Supp. 2d 601 (E.D. La. 1998), i.e. the passive personality principle and the "effects doctrine" (United States v. Alcoa, 148 F.2d 416 (2d Cir. 1945) § 402 of the Restatement of Foreign Relations Law of the United States. Third).

55.     This Court has jurisdiction pursuant to 28 U.S.C. § 2201 (creation of a remedy), and 28 U.S.C. §

2202 (further relief) as this action arises under the laws of the United States and New York.

56.     This Court has authority to issue the requested injunctive relief pursuant to 42 U.S.C. § 1983 and Federal Rule of Civil Procedure 65 (see also declaratory judgments pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57).

57.     Jurisdiction is also authorized under 28 U.S.C. § 1332.

58.     Venue is proper pursuant to 28 U.S.C. 1391(b,e) and Section 552(a)(4)(B), and 5 U.S.C. § 552(a)(2)(A), (3)(A),(C), (6)(A)(ii), (F), in that the Springer / Springer Nature have corporate offices in New York City, and a significant proportion of their income is derived from residents of New York.

59.     The Court has jurisdiction over out-of-state defendants per CPLR § 302(a)(2). Defendants Springer, Springer Nature, also maintain corporate offices in New York City and transact business in New York which is a major market for their products. Hence, New York Federal Courts have jurisdiction (see GTP Leisure Products, Inc. v. B-W Footwear, Co., 55 A.D.2d 1009, 391 N.Y.S.2d 489 (4th Dep't 1977); Brower v. New Republic, 7 Media L. Rep. 1605 (Sup. Ct. N.Y. Cty. 1981).

60.     Supplemental jurisdiction is asserted over state law claims pursuant to 28 U.S.C ' 1367. New York and New York City are also home to numerous universities with a substantial population of students, faculty, and scientists with professional interests in science in general, as well as biology and astronomy; and numerous science reporters work in New York and New York City--and thus reporters and residents of New York and New York City are consumers of Springer / Springer Nature products and have been and will be influenced by the defamatory statements of the Defendants (see Weil v. American University, 36 Media L. Rep. 1596 (S.D.N.Y. 2008).

61.     This case involves diversity of citizenship case. Plaintiff has the right to designate where and in which county the case can be heard (CVP § 503 / CPLR § 503(a).

62.     Venue is appropriate according to CVP § 503 (c). A foreign corporation authorized to transact business in the state, shall be deemed a resident of the county in which its principal office is located.

## PARTIES

**Plaintiff**

63.     Plaintiff Rhawn Joseph, Ph.D. in a resident of 677 Elm St., San Jose, CA 95126.

**Defendants**

64.     Defendant Springer Nature (AKA Springer Nature AG & Co. KGaA), is a global publishing company and maintains corporate offices at 1 New York Plaza, Suite 4600, New York, NY 10004-1562,

and is subject to New York Laws and Federal Laws and the United States Constitution and Bill of Rights.

65.     Defendant Springer maintains corporate offices at 1 New York Plaza, Suite 4600. New York, NY 10004-1562, and is a subsidiary of and/or incorporated within Springer Nature, and subject to Federal Laws and the United States Constitution and Bill of Rights.

66.     Defendant Elias Brinks, and at all times relevant to this Complaint, was contracted by and has been represented by and represents Springer / Springer Nature, and is the Editor-in-Chief of ASS which is published by Springer / Springer Nature, and his work address is School of Physics, Astronomy and Mathematics, University of Hertfordshire, Hatfield Hertfordshire AL10 9AB UK

67.     Defendant Jeremy Mould, and at all times relevant to this Complaint, was contracted by and has been represented by and represents Springer / Springer Nature, and is the Editor-in-Chief of ASS, and his work address is Centre for Astrophysics and Supercomputing, Mail number H29, Swinburne University of Technology, PO Box 218, Hawthorn Victoria 3122, Australia.

## FIRST CLAIM FOR RELIEF

### Infringement of Copyright

68.     Plaintiff incorporates by reference the allegations in the preceding paragraphs, as if fully set forth herein.

69.     This claim is brought by the Plaintiff against Defendants Springer Nature, Springer, Elias Brinks, Jeremy Mould.

70.     Plaintiff's work, "Life on Venus" (Work 1) is registered with the U.S. Copyright Office and Plaintiff is the designated and sole owner of the copyright.

71.     Plaintiff sent Defendants a "take down notice" and informed Defendants they were in violation of his copyright, and demanded that they remove Work 1 from their ASS website. They refused and instead threatened to alter the title and post defamatory statements on the Work.

72.     Therefore, Dr. Joseph brings this action for copyright infringement under 17 U.S.C.§101, 501 et seq. against the Defendants for infringement of his Work, i.e. "Life on Venus."

## SECOND CLAIM FOR RELIEF

### Breach of Contract, Tortious Interference

73.     Plaintiff incorporates by reference the allegations in preceding paragraphs, as fully set forth herein.

74.     This claim is brought by the Plaintiff against Defendants Springer Nature, Springer, Elias Brinks,

Jeremy Mould.

75.     Defendants twice entered into a contract with Plaintiff to publish his works, "Life on Venus" and "Life on Mars" and then breached those contracts, as defined by UCC § 2-207(1)(2) and New York Consolidated Laws, Uniform Commercial Code - UCC § 2-607, § 2-610,  § 2-510 and General Business Law, GBS § 458-I, § 899-H.

76.     Defendant Brinks engaged in "Tortious interference" and intentionally interfered with contractual relations by convincing the other Defendants to not honor their contact to publish "Life on Mars" (see See Robins Dry Dock & Repair Co. v. Flint, 175 U.S. 303 (1927); Venhaus v. Shultz, 155 Cal. App. 4th 1072, 1079—1080, 66 Cal. Rptr. 3d 432 (2007);  Union Oil Co. v. Oppen, 501 F.2d 558 (9th Cir. 1974); Kinsman Transit Co., 388 F.2d 821 (2d Cir. 1968).

77.     Defendants Brinks and Mould engaged in "Tortious interference" and intentionally interfered with contractual relations by convincing the other Defendants to disregard Springer and Springer Natures contractual guarantees as pertaining to repudiating a published work, and to not honor their contract, RE: Life on Venus, and to water mark the work with defamatory statements.

78.     According to Case Law, when one party (a tortfeasor) convinces another party to breach a contract with Plaintiff, or when the obligations of one party to perform a contractual obligation are disrupted, thereby preventing the plaintiff from receiving the performance promised, such conduct is termed tortious inducement of breach of contract; and this is sufficient for liability.

### THIRD CLAIM FOR RELIEF

### Libel and Defamation

79.     Plaintiff incorporates by reference the allegations in the preceding paragraphs, as if fully set forth herein.

80.     This claim is brought by the Plaintiff against Defendants Springer Nature,  Springer,  Elias Brinks, Jeremy Mould.

81.     Defendants have slandered, defamed and libeled the Plaintiff in April of 2020, and again in June of 2020, and have threatened to engage in additional defamatory and libelous conduct.

82.     Defendants conduct is malicious and libelous and is actionable according to New York State law CVP Rule 3016 (a) (h); see also Dillon v City of New York, 261 AD2d 34, 38, 704 NYS2d 1 (1999); (Mencher v. Chesley, 297 N.Y. 94, 75 N.E.2d 257 (1947); Epifani v. Johnson, 65 A.D.3d 224, 233, 882 N.Y.S.2d 234 (2d Dept.2009).

83.     Defendants conduct also meets the requirement for a claim of trade libel (42 U.S.C. § 1983), and for both trade libel and defamation, and Plaintiff is also filing suit for defamation under U.S. Code, Title 28, Part VI . Chapter 181, §4101.

## FOURTH CLAIM FOR RELIEF

### Fraud and Unfair and Deceptive Trade Practices

84.     Plaintiff incorporates by reference the allegations in the preceding paragraphs, as if fully set forth herein.

85.     This claim is brought by the Plaintiff against Defendants Springer Nature, Springer, Elias Brinks, Jeremy Mould.

86.     Plaintiff Dr. Joseph also brings this action as he has been a victim of deceptive trade practices and fraud under 18 U.S. Code Chapter 47, § 1038 and fraud and false advertising as defined by New York Penal Code PEN § 190 § 1935 § 190.65. Defendants twice breached their contracts with Plaintiff, violated his copyright, libeled and slandered the Plaintiff, charged Plaintiff excessive fees, failed to return those fees, failed to abide by their own contractual guarantees as to repudiating a published work, and thus, in all respects Defendants have behaved dishonestly, deceptively, and fraudulently.

87.     Defendants again breached their advertised and contractual guarantees to follow specific procedures before determining if an article should be retracted. Defendants instead made up lies and libeled Plaintiff, and Plaintiff is a victim of fraud, false advertising, and deceptive trade practices.

## FIFTH CLAIM FOR RELIEF

### Personal Injury - Intentional Infliction of Emotional Distress, Malice

88.     Plaintiff incorporates by reference the allegations in the preceding paragraphs, as if fully set forth herein.

89.     This claim is brought by the Plaintiff against Defendants Springer Nature, Springer, Elias Brinks, Jeremy Mould.

90.     Defendants have caused and threaten to cause Plaintiff profound personal injury, suffering, loss of enjoyment of life, emotional distress, and mental anguish (see Bush v. Lucas, 462 U.S. 367 (1983); Molzof v. United States, 501 U.S. 301 (1992). Plaintiff has been twice absolutely shocked and sickened by the conduct of these Defendants and threats to completely destroy his reputation.

91.     Defendants have caused and threaten to injure Plaintiff, his trade, business, and profession (Liberman v Gelstein, 80 NY2d 429, 435, 605 NE2d 344, 590 NYS2d 857 (1992); Four Star Stage

Lighting, Inc. v. Merrick, 56 A.D.2d 767, 392 N.Y.S.2d 297 (1st Dept. 1977).

92. Defendants have interfered with Plaintiff's ability to perform his professional duties, and have maliciously inflicted personal and professional injuries, and interfered with existing rights and this is actionable (Small v. United States, 333 F.2d 702 (3d Cir. 1964).

93. Plaintiff has been profoundly injured, emotionally, psychologically, and physically, by the aggregate acts of the Defendants and this is actionable (Bush v. Lucas, 462 U.S. 367 (1983).

94. Defendants have behaved maliciously and have been acting out of jealousy and hatred (See James v. Gannett Co., 40 N.Y.2d 415 (N.Y. 1976); Wolston v. Reader's Digest Association, 443 U.S. 157, 168 (1979); Gertz v. Robert Welch, 418 U.S. 323, 352 (1974); Curtis Pub. Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967); Rosenbloom v. Metromedia, 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed. 2d 296 (1971); Gertz v. Robert Welch, 418 U.S. 323, 94 S. Ct. 2997 (1974) Stern v. Cosby, 645 F. Supp. 2d 258 (S.D.N.Y. 2009);

## SIXTH CLAIM FOR RELIEF

### Negligence (42 U.S.C. § 1983)

95. Plaintiff incorporates by reference the allegations in the preceding paragraphs, as if fully set forth herein.

96. This claim is brought by the Plaintiff against Defendants Springer Nature, Springer, Elias Brinks, Jeremy Mould.

97. The Defendants maliciously and negligently caused and continue to cause Plaintiff profound injury, stress and emotional harm (See James v. Gannett Co., 40 N.Y.2d 415 (N.Y. 1976); Wolston v. Reader's Digest Association, 443 U.S. 157, 168 (1979); Gertz v. Robert Welch, 418 U.S. 323, 352 (1974); Curtis Pub. Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967). (Rosenbloom v. Metromedia, 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971); (Gertz v. Robert Welch, 418 U.S. 323, 94 S. Ct. 2997 (1974) Stern v. Cosby, 645 F. Supp. 2d 258 (S.D.N.Y. 2009);

98. Defendants have interfered with prospective rights, property rights, as well as existing rights and this is actionable (Small v. United States, 333 F.2d 702 (3d Cir. 1964)).

99. Plaintiff has established motive, cause, negligence, duty, breach, standing and damages and has met the standard for proving negligence and injury (see Florida Foundation Seed Producers, Inc. v. Georgia Farms Services, LLC, No. 1:10-CV-125, 2012 WL 4840809, at *21 (M.D. Ga. Sept. 28, 2012) (Sands, J.) (citing Nat'l. Serv. Indus., Inc. v. Vafla Corp., 694 F.2d 246, 249 (11th Cir. 1982)); Shipner v.

Eastern Air Lines, 868 F.2d 401, 407 (11th Cir. 1989).

## SEVENTH CLAIM FOR RELIEF
### Demand for Injunctive Relief

100.     Plaintiff incorporates the allegations in the preceding paragraphs, as if fully set forth herein.

101.     This claim is brought by the Plaintiff against Defendants Springer Nature, Springer, Elias Brinks, Jeremy Mould.

102.     Defendants have defamed, libeled and harmed this Plaintiff and Defendants have stated they intend to libel and destroy Plaintiff's reputation by altering his work "Life on Venus" so it make defamatory claims about Plaintiff.

103.     Plaintiff must be protected and asks the Court to provide declarative relief and issue a permanent injunction, and order that (1) Defendants must remove and delete Plaintiff's Work, "Life on Venus" from the ASS website and issue Plaintiff a 100% refund, (2) Defendants must not republish the Work on any other website, (3) Defendants are barred from issuing or publishing any public statements that may impugn Plaintiff, Plaintiff's reputation, Plaintiff's professionalism, Plaintiff's abilities as a scientist and/or scholar, or any of Plaintiff's published or unpublished works.  4) Defendants are barred from altering Plaintiff's work, or title, and are barred from making or attaching any statements or comments to or about this article or about Plaintiff.

104.     This Court has authority to issue the requested injunctive relief pursuant to 42 U.S.C. § 1983 and Federal Rule of Civil Procedure 65.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays on behalf of himself, for the following:

105.     For all damages legally and/or proximately caused to Plaintiff by Defendants in an amount to be determined at trial;

106.     Plaintiff is entitled to future damages;

107.     Plaintiff is entitled to "compensatory damages" for emotional and mental distress;

108.     The Plaintiff is entitled to General damages, Economic and Special Damages, Pecuniary Damages, Punitive and Exemplary damages;

109.     Plaintiff is entitled to injunctive relief

110.     For time-compensation and costs of suit incurred.

111.     For permanent injunctive relief pursuant to 42 U.S.C. § 1983 and FRCP 65.

112.    For other such additional relief as the Court deems proper.


**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

| | |
|---|---|
| DATED: <u>June 29, 2020</u> | Respectfully submitted |
| | By: <u>/s/Rhawn Joseph, Ph.D.</u> |
| | RHAWN JOSEPH, Ph.D., Plaintiff |


**VERIFICATION AND PLAINTIFF'S DECLARATION**

I, Rhawn Joseph, Ph.D. am the plaintiff in the above-entitled action. I have read the foregoing first amended complaint and know its contents. I declare the same is true of my own knowledge and those matters that are alleged in the complaint on information and belief, and as to those matters, I believe to be true. I declare under penalty of perjury under the laws of the United States of America and the State of New York that the foregoing is true and correct to the best of my knowledge and belief.

| | |
|---|---|
| <u>June 29, 2020</u> [date] | <u>/s/Rhawn Joseph, Ph.D.</u> |
| | Plaintiff: Rhawn Joseph, Ph.D |