```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
                                                               :
RHAWN JOSEPH,                                                  :
                                                               :
                        Plaintiff,                             :    ORDER
                                                               :
        -against-                                              :
                                                               :    20 Civ. 4672 (AJN) (GWG)
SPRINGER NATURE, et al.,                                       :
                                                               :
                        Defendants.                            :
---------------------------------------------------------------x
```

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

     Plaintiff Rhawn Joseph has sought from the Clerk the entry of defaults against defendants Elias Brinks (Docket # 46) and Jeremy Mould (Docket # 47) pursuant to Fed. R. Civ. P. 55(b)(2). The Clerk's Office has requested that the Court address the requests.

     Joseph is entitled to an entry of default if he shows that Brinks and Mould were "properly served with the Amended Complaint, and subsequently failed to timely respond." Hunter v. Shanghai Huangzhou Elec. Appliance Mfg. Co., 2020 WL 5258313, at *4 (N.D.N.Y. Sept. 3, 2020); see also Waraich v. Nat'l Australia Bank Ltd., 2019 WL 1003625, at *2 (S.D. Tex. Feb. 28, 2019) ("Before default can be entered, the plaintiff must submit evidence supporting that the defendant has been properly served.").

     Both Brinks and Mould are living in foreign countries. Brinks lives in the United Kingdom (Docket # 46, ¶ 10), and Mould lives in Australia (Docket # 47, ¶ 12). To support his application, Joseph has filed affidavits reflecting that service was made by email on both defendants (Docket # 45). He has also pointed to evidence he served both Mould and Brinks "by certified and signed registered mail at [their] place[s] of work," (Docket # 46, at 2; Docket # 47, at 2), and asks that this also be considered proper service. More precisely, the cited affidavits reflect that service was made by sending the summons and complaint to each of the defendants "in a DHL envelope and mailed and served, postage prepaid with a tracking number." (Docket # 36, at 4; Docket # 37, at 4).

     We address each form of service separately. Because both Brinks and Mould are residents of a foreign countries, Fed. R. Civ. P. 4(f) governs service.

Email Service

     Rule 4(f)(1) provides that service may be effectuated by "any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." As both the United Kingdom and Australia are signatories of the Hague Convention, the service on Brinks

and Mould, if effectuated under the Hague Convention, must comply with its strictures. Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 705 (1988) ("compliance with the Convention is mandatory in all cases to which it applies").  However, "email is not a permitted method of service under the Hague Convention." Zanghi v. Ritella, 2020 WL 589409, at *5 (S.D.N.Y. Feb. 5, 2020).  Joseph argues that the Hague Convention does permit email service, apparently construing email as a "postal channel."  Docket # 46, ¶ 11 ("Service of a summons and complaint by email is authorized by Article 10(a) of the Hague Service Convention . . . .").  However, as noted by Zanghi, "most courts that have considered that argument, including all pertinent decisions from the Southern District of New York, have rejected it."  Zanghi, 2020 WL 589409, at *5.  We too reject it as inconsistent with the text of the Convention.

As to Rule 4(f)(2), the provisions of that subsection come into play only if "there is no internationally agreed means [of service], or if an international agreement allows but does not specify other means[.]"  Fed. R. Civ. P. 4(f)(2).  Neither condition is met here.  The Hague Convention is an internationally agreed means of service.  But the Hague Convention does not allow service by email, so no "international agreement" exists that "allows but does not specify" email as a means of service under 4(f)(2).  See Zanghi, 2020 WL 589409, at *5 (finding that email service under 4(f)(2) would be improper).

Finally, 4(f)(3) cannot provide the basis for service because that provision allows for service by "other means . . . as the court orders," Fed. R. Civ. P. 4(f)(3), and no order as to a means of service has issued in this case.

Service By Postal Mail

Joseph argues that, even if email service is not sufficient under the Hague Convention, service was proper because (1) the Hague Convention authorizes "[s]ervice of a summons and complaint by mail," and (2) he served both Mould and Brinks "by certified and signed registered mail at [their] place[s] of work."  Docket # 46, at 2; Docket # 47, at 2.  We will assume without deciding that service by means of a private courier such as DHL constitutes service by "mail." Nonetheless, as was made clear by Water Splash, Inc. v. Menon, 137 S. Ct. 1504 (2017), "in cases governed by the Hague Service Convention, service by mail is permissible if two conditions are met: first, the receiving state has not objected to service by mail; and second, service by mail is authorized under otherwise-applicable law."  Id. at 1513.  The case cited by Water Splash., the Ninth Circuit case of Brockmeyer v. May, 383 F.3d 798 (9th Cir. 2004), explained that "[a]ny affirmative authorization of service by international mail, and any requirements as to how that service is to be accomplished, must come from the law of the forum in which the suit is filed," id. at 804 — in other words, the law of the United States, which in this instance is Rule 4(f) itself.  See id. at 800 ("In this case, after determining that the Hague Convention does not prohibit service by international mail, the necessary next step is to analyze Rule 4(f) to determine whether it affirmatively authorizes such service.").

We will assume without deciding that neither Australia nor the United Kingdom have objected to service by mail under the Hague Convention.  We must still determine, however, whether service by mail is "authorized" under Rule 4(f).  Certainly Rule 4(f)(1) itself does not

"authorize" service by mail on a person in a foreign country, since it addresses only internationally agreed means of service such as the Hague Convention and because service by mail is not an "internationally agreed means of service." See Water Splash, 137 S. Ct. at 1513 (while the Hague Convention "encompasses service by mail," "this does not mean that the Convention affirmatively *authorizes* service by mail") (emphasis in original); see also In re Coudert Bros. LLP, 2017 WL 1944162, at *8 (S.D.N.Y. May 10, 2017) ("[P]ermitting service via mail, to the extent the Hague Convention indicates that it 'shall not interfere' with the freedom to send judicial documents via mail, is different from expressly authorizing service via mail such that it could be said to be an 'internationally agreed means of service.'").

Turning to Rule 4(f)(2), "Rules 4(f)(2)(B) and 4(f)(2)(C) are also inapplicable as [Joseph] neither filed a letter rogatory nor letter of request with an [Australian or United Kingdom] authority, nor did [he] use the Clerk of Court to send [his] mailings." Zanghi, 2020 WL 589409, at *3 n.1. An additional impediment exists to service by the Clerk under Rule 4(f)(2)(C) because there has not been a competent showing that Australia and the United Kingdom do not prohibit service by mail.

Fed. R. Civ. P. 4(f)(2)(A) provides that a foreign individual may be served by a "method that is reasonably calculated to give notice" --- and as long as "an international agreement allows but does not specify other means" --- in the following manner: "as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction." Here, Joseph's filings do not satisfy his burden of showing that mailing the complaint and summons to Mould and Brinks' places of work is prescribed by the laws of Australia and the United Kingdom that govern service by mail in courts of general jurisdiction. Instead, he cites only to an unclear excerpt of United Kingdom law authorizing service of process by email — not by overnight mail to a defendant's place of work (Docket # 46, ¶ 11; Docket # 47, ¶ 11). Because Joseph has neither submitted affidavits of experts in these nations' laws who can attest that such service is permitted nor attached authenticated excerpts of the relevant legal codes allowing such service, the certificates of default will not issue. See generally Zanghi, 2020 WL 589409, at *4 (finding service insufficient under 4(f)(2)(A) because the plaintiffs "did not supply the Court with a legal opinion on, or certified translations of" the allegedly applicable law); see also Waraich, 2019 WL 1003625, at *4 (refusing to enter default because plaintiff "has not provided the court with a basis to conclude that he properly served" the Australian defendant).

Finally, as already noted, Rule 4(f)(3) does not apply because there has been no Court order authorizing mail as a means of service on any defendant in this case.

Accordingly, Joseph's applications for certificates of default are denied.

SO ORDERED

Dated: New York, New York
October 19, 2020

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge